**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|                                      |     |                          |
|--------------------------------------|-----|--------------------------|
|                                      | *   |                          |
| WELLS FARGO EQUIPMENT                 |     |                          |
|    FINANCE, INC.,      | *   |                          |
|                                      |     | **Case No.: PWG-15-1371**|
|    **Plaintiff,**      | *   |                          |
|                                      |     |                          |
| **v.**                               | *   |                          |
|                                      |     |                          |
| **NABIL J. ASTERBADI,**              | *   |                          |
|                                      |     |                          |
|    **Defendant.**      | *   |                          |

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *

## MEMORANDUM OPINION

More than two decades after the United States District Court for the Eastern District of Virginia entered a judgment ("Judgment") against Nabil J. Asterbadi, he seeks a permanent injunction to prohibit its enforcement, or alternatively an accounting to determine the current amount of the Judgment, as well as discovery to determine whether the Judgment was assigned to Plaintiff Wells Fargo Equipment Finance, Inc. ("Wells Fargo") and, if so, how much is due under the Judgment.  ECF No. 58.  Wells Fargo opposes Dr. Asterbadi's motion and the discovery he seeks.[1]  Dr. Asterbadi has not shown that he has suffered injury, and therefore he is not entitled to a permanent injunction.  Additionally, this Court and the Fourth Circuit already determined that the Judgment was assigned to Wells Fargo.  Yet, considering Dr. Asterbadi's request for an accounting and, in the interest of justice, construing Dr. Asterbadi's motion as a Rule 60(b)(5) motion for relief from a judgment that has been, at least in part, satisfied, I will

---

[1] The parties fully briefed the motion, ECF Nos. 58, 61, 63, and also briefed the discovery dispute, ECF Nos. 65, 69, 70.  A hearing is not necessary.  *See* Loc. R. 105.6.

grant the motion insofar as Dr. Asterbadi seeks discovery to determine the amount currently due on the Judgment before Wells Fargo executes on it.

### Background

The United States District Court for the Eastern District of Virginia entered a judgment ("Judgment") in favor of CIT Group/Equipment Finance Inc. ("CIT") and against Nabil J. Dr. Asterbadi (the resident agent for and a stockholder of Zachair Ltd.) on October 4, 1993. *See Wells Fargo Equip. Fin., Inc. v. Asterbadi* ("*Wells Fargo I*"), No. PWG-15-1371, 2015 WL 5521797, at *1 & n.1 (D. Md. Sept. 16, 2015). CIT, formerly the plaintiff in this action, filed a Certification of Judgment for Registration in Another District, ECF No. 1, in this Court on August 27, 2003.[2] CIT also moved for a permanent injunction (i) to prevent Defendant Asterbadi from transferring his corporate stock certificates in Zachair Ltd. and (ii) to require Dr. Asterbadi to turn over these certificates to CIT in partial satisfaction of the Judgment. CIT's Mot., ECF No. 3. Dr. Asterbadi consented to the portion of the motion enjoining him from transferring the certificates but contested the portion of the motion requiring him to turn over the certificates to CIT. Def.'s Opp'n to CIT's Mot., ECF No. 4. The Court did not resolve the motion at that time.

Over a year later, on November 23 and December 3, 2004, CIT filed two Notices of Partial Satisfaction of the Judgment. The first noted a credit of $1,699,327.96 from "sale of collateral" in 1993;[3] a voluntary $259,740.20 reduction of attorneys' fees; and $81,500 in

---

[2] Originally, the case proceeded as miscellaneous matter 03-mc-412.

[3] The "collateral" was an airplane that Washington Capital Aviation & Leasing, Inc., with Asterbadi as its sole stockholder, purchased using a loan from CIT; CIT held a security interest in the airplane. Def.'s Mot. 2. Washington Capital Aviation & Leasing, Inc. defaulted on the loan, leading to the debt that is the subject of this Judgment. *Id.*

"credits against accrued interest," leaving a "principal due of $586,682.01 and attorneys' fees due of $88,002.30." ECF No. 6. The second noted the same amounts due, in addition to "accrued but unpaid interest of $1,175,009.98 as of December 3, 2004, for a total due as of December 3, 2004, of $1,849,694.20," with interest continuing to accrue "at the rate of $289.32 per day." ECF No. 8.

And there things stood (in this Court) for more than a decade. Then, on April 7, 2015, Counsel for CIT filed a notice with this Court that CIT had assigned its interest in the Judgment to Plaintiff Wells Fargo Equipment Finance, Inc. ("Wells Fargo") and that Counsel would be representing Wells Fargo in this case. Notice of Assignment of Judgment, ECF No. 9. Wells Fargo then attempted to collect on the Judgment, and Dr. Asterbadi sought a protective order, asking the Court to "prohibit[] the taking of a post judgment deposition of Zachair, Ltd., by Wells Fargo Equipment Finance, Inc." and to "declar[e] the judgment of the United States District Court for the Eastern District of Virginia . . . unenforceable and [to] permanently enjoin[] enforcement of the judgment in Maryland." *See* Def.'s Mot. for Protective Order 1, ECF No. 11. On August 26, 2015, Wells Fargo filed a Request and Notice for Renewal of Judgment, ECF No. 25, asking "the Clerk [to] note the Court's records to reflect that the Judgment is renewed as of the date this Request was filed."

<u>This Court's Previous Orders</u>

In a September 16, 2015 Memorandum Opinion and Order, ECF No. 26, I found that "CIT . . . assigned its interest in the 1993 Judgment to Plaintiff Wells Fargo"; the assignment was filed in this Court, albeit by Dr. Asterbadi, not by the judgment creditor; Wells Fargo, now

Plaintiff in this action, has standing to enforce the Judgment;[4] and the Judgment is enforceable because the time during which it can be enforced started to run on the date the Judgment was certified in this Court, i.e., August 27, 2003. *Wells Fargo I*, 2015 WL 5521797, at *1–2 (citing Assignment Agr.). Yet I also found that Plaintiff had failed to meet the burden necessary to grant its decade-old motion for permanent injunctive relief on the contested portion of the motion. *Id.* As a result, I granted in part and denied in part Plaintiff's Motion for Permanent Injunction, without ruling on Defendant's Motion for Protective Order. *Id.* at *4.

Dr. Asterbadi appealed, and I denied his Motion for Protective Order without prejudice pending the appeal. ECF Nos. 27, 30. I approved the parties' Stipulation and Consent Order for Preservation of Assets, Interim Stay of Discovery and Execution on Judgment, Tolling of Limitations and for Other Relief, ECF No. 43, which restrained Dr. Asterbadi from "selling, removing, dissipating, alienating, transferring, assigning, pledging[,] encumbering, [or] granting any interest [in] or similarly dealing with any [of his] Assets" or asking or helping anyone else to do so. ECF No. 44. It also stayed discovery in aid of execution and execution upon the Judgment, and it stayed any limitations periods "that may be applicable to claims setting aside or avoiding voidable transactions or transfers by Defendants for Purposes of Plaintiff's collection on the underlying judgment." *Id.* I also issued a Memorandum Opinion and Order on May 26, 2016, granting Dr. Asterbadi's motion to stay and extending the stipulated agreement to protect Wells Fargo's interests until the Fourth Circuit ruled on the appeal. ECF No. 47.

---

[4] Dr. Asterbadi focuses on my ruling that Wells Fargo had standing *to respond to my show cause order* regarding the enforceability of the 1993 Judgment. *See* Def.'s Mot. 15, 17; Def.'s Reply 13. While I did so rule, I also found that Wells Fargo had standing to enforce the Judgment. *See Wells Fargo I*, 2015 WL 5521797, at *1–2; *see also Wells Fargo Equip. Fin., Inc. v. Asterbadi* ("*Wells Fargo II*"), 841 F.3d 237, 239–40 (4th Cir. 2016) ([T]he district court rejected Asterbadi's argument that Wells Fargo lacked standing to enforce the judgment . . . .") (on docket as ECF No. 49).

<u>The Fourth Circuit's Ruling</u>

The Fourth Circuit affirmed the September 16, 2015 Memorandum Opinion and Order regarding standing.  *Wells Fargo Equip. Fin., Inc. v. Asterbadi* ("*Wells Fargo II*"), 841 F.3d 237, 239–40 (4th Cir. 2016) (on docket as ECF No. 49). Noting that Md. Rule 2-624 (applicable under Fed. R. Civ. P. 69(a)(1)) "provides that the assignee of a judgment may enforce the judgment <u>in its own name</u> when it files '<u>the assignment</u> . . . in the court where the judgment was entered,'" the Fourth Circuit concluded that Wells Fargo had standing to enforce the Judgment in this Court, despite having filed only a notice of assignment rather than the actual assignment, because "Asterbadi filed the actual assignment, . . . so that the district court had before it <u>both</u> the notice of assignment <u>and</u> the assignment itself." *Id.* at 243 (quoting Md. Rule 2-624) (emphasis in *Wells Fargo II*).  It also agreed with me that the registration was not, as Dr. Asterbadi argued, "merely a 'ministerial act.'" *Id.* at 245.   In reaching its conclusion, it construed 28 U.S.C. § 1963, governing registration of judgments in other districts,

> to elevate a registered money judgment such that it functions in every way as a new judgment. It follows that with the registered judgment functioning as a new judgment, the limitations period for enforcement runs from the date of registration. This is the conclusion that every court of appeals that has construed § 1963 has reached.

*Id.* at 245–46.  The Fourth Circuit observed that, under Maryland law, "a money judgment expires 12 years from the date of entry or from the date of renewal, if it is renewed before its expiration." *Id.* at 243 (citing Md. Rule 2-625).  Thus, given that CIT registered it on August 27, 2003 and "Wells Fargo renewed the judgment for another 12 years on August 26, 2015, the registered judgment remains enforceable in Maryland to August 26, 2027." *Id.* at 245.  The Fourth Circuit held:

> [T]he registration of the Virginia district court judgment in the District of Maryland at a time when the judgment was not time-barred by Virginia law

functions as a new judgment in the District of Maryland, and Maryland's 12-year limitations period for enforcement on the judgment begins running from the date of registration.

*Id.* at 246.   Thus, its holding was limited to the time bar issue.   *See id.*   But, significantly, in reaching its holding, the Fourth Circuit observed that "[e]ffective June 29, 2007, CIT sold and assigned its judgment against Asterbadi to Wells Fargo as part of an asset purchase agreement." *Id.* at 240–41.

## Enforcement of the Judgment, and Post-Judgment Discovery

Dr. Asterbadi filed a pre-motion conference request letter, ECF No. 53, and I held a conference call on December 15, 2016.  I permitted Dr. Asterbadi to file a motion regarding the enforceability of the Judgment and other issues raised in his letter.  ECF No. 57.  Dr. Asterbadi filed a Motion to Permanently Enjoin Enforcement of Judgment or in the Alternative for Accounting to Determine Unpaid Balance on the Federal Judgment and Accrued Interest ("Perm. Inj. Mot.").  ECF No. 58. The Permanent Injunction Motion now is ripe. ECF Nos. 61, 63.

During the December 15, 2016 call, I also lifted the stay on discovery.  I did not lift the Consent Order as it pertained to preservation of assets, prohibiting Dr. Asterbadi from "selling, removing, dissipating, alienating, assigning, pledging[,] encumbering, granting any interest or similarly dealing with any assets of the Defendant" or asking or helping anyone else to do so. Jan. 21, 2016 Consent Order, ECF No. 44.  I directed the parties to file a proposed discovery plan and schedule by January 16, 2017 and to read Rule 26(g) and certify to me that they have done so by January 16, 2017. They have done neither.

Instead, Dr. Asterbadi filed a letter stating that the parties do not agree on the scope of discovery, ECF No. 65 (and Wells Fargo filed a response, ECF No. 69, and Dr. Asterbadi filed a

reply, ECF No. 70, both in violation of the Case Management Order ¶ B(3), ECF No. 17).[5]  Dr. Asterbadi argues in his letter that enforcement of the Judgment should be barred because CIT and Wells Fargo took no action for a decade, and he wants discovery to find out why. Dr. Asterbadi also seeks discovery to determine what CIT assigned to Wells Fargo, and specifically whether it intended to assign the Judgment to Wells Fargo.  Additionally, he wants to determine what payments CIT received toward the Judgment and how it treated the payments it received. And, he raises the question of whether the amount due is governed by the Judgment or the Forbearance Agreement that the parties later signed.

Wells Fargo responded to say that it questions whether Dr. Asterbadi is entitled to any post-judgment discovery beyond what Wells Fargo already agreed to produce.  Wells Fargo notes that the discovery rules provide for the judgment creditor, not the judgment debtor, to engage in post-judgment discovery.  Wells Fargo contends that Dr. Asterbadi is indirectly challenging the order already entered against him (and affirmed by the Fourth Circuit) and no discovery is necessary, relevant, or allowed.

These discovery disputes raise the same issues addressed in the Permanent Injunction Motion briefing.  Therefore, I will resolve the Permanent Injunction Motion and then define the scope of discovery in this case.

## **Permanent Injunction Motion**

To obtain a permanent injunction, "a plaintiff must show (1) irreparable injury, (2) remedies at law are inadequate to compensate for that injury, (3) the balance of hardships

---

[5] Thus, to date, counsel for both parties have overlooked, forgotten, or ignored my Case Management Order and my order to certify that they have read Rule 26(g).  Having conferred with them during a telephone conference on February 23, 2017, about the consequences of continuing to disregard the Court's case management orders, I am satisfied that they will no longer do so.

between the plaintiff and defendant warrants a remedy, and (4) an injunction would not disserve the public interest." *Raub v. Campbell,* 785 F.3d 876, 885 (4th Cir. 2015) (quoting *Monsanto Co. v. Geerston Seed Farms,* 561 U.S. 139, 156-57 (2010)).  "An injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008).  Curiously, neither party addresses the standard in their briefs.[6]

Insofar as it is, indeed, injunctive relief that Dr. Asterbadi seeks, he cannot, as the judgment debtor (not the plaintiff), show irreparable injury at this juncture.  The Judgment is based on the judgment *creditor's* injury.  And, while Dr. Asterbadi argues that Wells Fargo is not entitled to his assets, he has failed to provide sufficient evidence in support of this argument.[7] Indeed, he seeks discovery to obtain that evidence, should it exist.  Certainly, Wells Fargo could locate Dr. Asterbadi's assets, execute on the Judgment, obtain more than Dr. Asterbadi contends it is entitled to, and entangle what (according to Dr. Asterbadi) is rightfully Dr. Asterbadi's in a Gordian knot.  But, even if that were likely—which I cannot determine on the record before me—, this is not a motion for a *preliminary* injunction, where Dr. Asterbadi only would need to show a likelihood of success on the merits.  *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  And, that possible injury is not injury that Dr. Asterbadi "has suffered."  *See*

---

[6] When, previously, Plaintiff moved for a permanent injunction (ECF No. 3), Plaintiff similarly failed to "address[] these factors for why Defendant should be required to turn over the stock certificates other than arguing (on October 31, 2003) that '[t]ime is of the essence because Dr. Asterbadi is alerted to CIT's attempt to seize the Certificates and therefore is likely to hide the Certificates, if they exist, or transfer his ownership interest in Zachair."  *Wells Fargo I*, 2015 WL 5521797, at *4.

[7] The evidence he has attached suggests that CIT did collect on the Judgment by seizing some of his real and personal property, but it is unclear whether the judgment creditor disputes the acquisition or value of these assets, and there is no evidence about how any amounts obtained were applied to Dr. Asterbadi's debt.

*eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006) ("A plaintiff [seeking a permanent injunction] must demonstrate: (1) that it *has suffered* an irreparable injury . . . ." (emphasis added)); *see Dominion Transmission, Inc. v. Town of Myersville Town Council*, 982 F. Supp. 2d 570, 580 (D. Md. 2013) (same).  Thus, Dr. Asterbadi is not entitled to a permanent injunction. *See eBay*, 547 U.S. at 391.

But, Dr. Asterbadi also seeks an accounting, and it appears that what he wants to do is challenge both Wells Fargo's ability to enforce the Judgment against him and the scope of the unpaid balance of that Judgment, if enforceable by Wells Fargo.  In the interest of justice, I will construe his motion as one for relief from the Judgment under Fed. R. Civ. P. 60(b)(5) or (6). *See* Fed. R. Civ. P. 1.  Rule 60(b) provides that, "within a reasonable time," a judgment debtor may file a motion asking for relief from a judgment on the grounds that "the judgment has been satisfied," or for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(5)–(6).

<u>Whether CIT Assigned the Judgment to Wells Fargo</u>

Dr. Asterbadi continues to insist that Wells Fargo cannot enforce the Judgment because "the assignment and assumption agreement [between CIT and Wells Fargo] was ineffective to assign the federal judgment against Asterbadi."  Def.'s Perm. Inj. Mot. 14.  If this were the case, it would be a "reason that justifies relief" from the Judgment under Fed. R. Civ. P. 60(b)(6). Wells Fargo counters that the law of the case, the mandate rule, and the *Rooker–Feldman* doctrine bar consideration of this issue.  Pl.'s Opp'n 3, 14.

*1. Rooker–Feldman*

Wells Fargo argues that *Rooker–Feldman* bars this Court's consideration of whether the Judgment was properly assigned to Wells Fargo.  Pl.'s Opp'n 14.  But *Rooker–Feldman*, a

jurisdictional doctrine, *see Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 196 (4th Cir. 2002), is inapplicable. The *Rooker–Feldman* doctrine "holds that 'lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments.'" *Thana v. Bd. of License Comm'rs for Charles Cnty., Md.*, 827 F.3d 314, 319 (4th Cir. 2016) (quoting *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (per curiam)). Thus, by invoking the doctrine, Wells Fargo essentially is asking this Court to find that it does not have jurisdiction over the very suit that Wells Fargo brought. *See id.* The doctrine "assesses only whether the process for appealing a state court judgment to the Supreme Court under 28 U.S.C. § 1257(a) has been sidetracked by an action filed in a district court *specifically* to review that state court judgment." *Id.* at 320. It is "confined to . . . *cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced* and inviting district court review and rejection of those judgments." *Id.* (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)) (emphasis in *Thana*). To emphasize the narrow scope of the doctrine, "the Supreme Court has noted repeatedly that, since the decisions in *Rooker* and *Feldman*, it has *never* applied the doctrine to deprive a district court of subject matter jurisdiction," and, "since *Exxon*, [the Fourth Circuit has] never, in a published opinion, held that a district court lacked subject matter jurisdiction under the *Rooker–Feldman* doctrine." *Id.*

Here, the judgment creditor, which prevailed under the "*state-court judgment rendered before the district court proceedings commenced*," brought this litigation, not Dr. Asterbadi, the "state-court loser" at the time CIT filed this case. *Id.* Moreover, the *Rooker–Feldman* doctrine does not apply because of the procedural posture of the state court litigation, in which the Maryland Court of Special Appeals recently reversed the orders of the state trial courts and remanded the cases in an unreported opinion, *Asterbadi v. Wells Fargo* ("*Asterbadi*"), Nos. 1590

and 2174, slip op. at 1 (Md. Ct. Spec. App. Feb. 21, 2017).  *See Thana*, 827 F.3d 314 at 321. *Dr.*

*Asterbadi* is not asking this Court "to exercise appellate jurisdiction over a final judgment from

'the highest court of a State in which a decision could be had'"; *he* did not file this suit or remove

it to this Court.  *Id.* (quoting 28 U.S.C. § 1257(a) (emphasis added)). And, given that the state

court litigation is still "on track for potential review by the U.S. Supreme Court," and this suit

would not "bypass the Supreme Court's appellate jurisdiction under 28 U.S.C. § 1257(a) over

any relevant state court judgment," the suit in this Court does not implicate the purpose behind

the *Rooker–Feldman* doctrine—to prevent litigants from frustrating the Supreme Court's

jurisdiction. *Id.* at 322. Therefore, "this federal action is a concurrent, independent action

supported by original jurisdiction conferred by Congress on federal district courts," and the

*Rooker–Feldman* doctrine does not apply. *See id.* at 321.

### 2.  *Law of the Case and Mandate Rule*

"The law of the case doctrine provides that, 'when a court decides upon a rule of law, that

decision should continue to govern the same issues in subsequent stages in the same case.'"

*Chaplick v. Mao*, No. TDC-13-2070, 2016 WL 4516061, at *3 (D. Md. Aug. 25, 2016) (quoting

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (quoting *Arizona v.*

*California,* 460 U.S. 605, 618 (1983))).  "Courts may decline to follow the law of the case (1)

when a trial has resulted in substantially different evidence [or] (2) there has been a change in

controlling legal authority that has made a contrary decision of law applicable to the issue." *Id.*

(citing *United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999)).  Additionally, a court need

not follow the law of the case if "the prior decision was clearly erroneous or would result in

manifest injustice."  *Id.* (citing *Aramony*, 166 F.3d at 661). This Court "has significantly more

discretion" under the law of the case doctrine than with regard to an appellate court ruling, and is

"not bound by its own prior rulings to the same extent it would be bound to the prior ruling of a higher court." *See Washington Gas Light Co. v. Prince George's Cnty. Council Sitting as Dist. Council*, 784 F. Supp. 2d 565, 571 (D. Md. 2011).

> The mandate rule "is merely a specific application of the law of the case doctrine." *United States v. Pileggi*, 703 F.3d 675, 679 (4th Cir.2013) (citation omitted). It "prohibits lower courts, with limited exceptions, from considering questions that the mandate of a higher court has laid to rest." *Moore v. Bennette*, 517 F.3d 717, 727 (4th Cir. 2008) (citation omitted).

*CoreTel Va., LLC v. Verizon Va., LLC*, 808 F.3d 978, 983 (4th Cir. 2015). "[T]he mandate rule 'forecloses relitigation of issues expressly or impliedly decided by the appellate court.'" *Brown v. Nucor Corp.*, 785 F.3d 895, 921 (4th Cir. 2015) (quoting *United States v. Pileggi*, 703 F.3d 675, 679 (4th Cir. 2013) (quoting *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993))). But, "the mandate rule and the broader law of the case doctrine 'cannot apply when the issue in question was outside the scope of the prior appeal,'" such as when "the parties had not yet argued it and the district court had not yet addressed it." *Id.* at 927 (quoting *Transamerica Leasing, Inc. v. Instit. of London Underwriters*, 430 F.3d 1326, 1332 (11th Cir. 2005)).

To the extent that Dr. Asterbadi raises the issue of Wells Fargo's standing, that issue already has been decided in this Court and on appeal. Both held that Wells Fargo has standing to enforce the Judgment, and I am not going to revisit that issue. *See Wells Fargo I*, 2015 WL 5521797, at *1; *Wells Fargo II*, 841 F.3d at 243.

As for whether CIT assigned the Judgment against Dr. Asterbadi to Wells Fargo, Dr. Asterbadi insists that neither court addressed the discrete question he now raises: "what chose in action [i.e., right to recover debt] was assigned by CIT to Wells Fargo"? Def.'s Perm. Inj. Mot. 15. He argues that the Judgment simply was not part of what was assigned in the Assignment Agreement, despite the "self-serving affidavit from Wells Fargo as the assignee that the

judgment was included in the file that was transferred as part of the 2007 transaction." *Id.* (citing Rachel C. Owens Aff. ¶ 8, Def.'s Perm. Inj. Mot. Ex. 10, ECF No. 58-2, at 29.

I noted in my previous opinion that Dr. Asterbadi "provided me with a copy of the assignment and assumption agreement ['Assignment Agreement'] that Wells Fargo filed with the Circuit Court for Montgomery County," *Wells Fargo I*, 2015 WL 5521797, at *2 (citing Assignment Agr., Def.'s Supp. Ex. 1, ECF No. 23-1, at 5–8). The Assignment Agreement stated that it "provide[d] for assignment of certain Contracts," Assignment Agr. ¶ A, and that CIT, through the Assignment Agreement, "cause[d] to be transferred and delivered unto Purchaser, its successors and assigns, all of Seller's and any applicable CIT Holder's obligations, rights, titles and interests in and to the Assumed Contracts," *id.* ¶ 1. Attached to the Assignment Agreement was a one-line schedule with regard to CIT customer Washington Capital Aviation, listing a "Close-out Date" of July 21, 1994, and indicating that the account was in "Salvage/Recovery." Dr. Asterbadi also filed an Affidavit in Support of Supplemental Notice of Assignment of Judgment, Def.'s Supp. Ex. 1, ECF No. 23-1, at 10–12, the same affidavit he now calls "self-serving." In the affidavit, Rachel Owens, Loan Adjuster IIII at Wells Fargo, stated that "Wells Fargo's records establish that, pursuant to the Assignment, CIT assigned to Wells Fargo its interest in an asset described as Washington Capital Aviation (the 'WCA File'), including all judgments related thereto"; that the Judgment "was originally obtained by CIT and is included in the WCA File"; and that "[a]ccordingly, CIT assigned the judgment to Wells Fargo in connection with the Assignment." Owens Aff. ¶¶ 7–8. Based on that evidence—*provided to me by Dr. Asterbadi*—I found that "CIT . . . assigned its interest in the 1993 Judgment to Plaintiff Wells Fargo." *Wells Fargo I*, 2015 WL 5521797, at *2 (citing Assignment Agr.). Similarly, the Fourth Circuit stated: "Effective June 29, 2007, CIT sold and assigned its judgment against

Asterbadi to Wells Fargo as part of an asset purchase agreement." *Wells Fargo II*, 841 F.3d at 240–41; *see id.* at 243 (noting that "the actual assignment" was a part of the record before the district court).

Although these are findings of fact, not rules of law, these findings were critical to the legal determination that Wells Fargo had standing, as it could not have had standing if the Judgment had not been assigned to it.   Therefore, the law of the case doctrine bars reconsideration of these underlying factual determinations.   *See U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 804 F.3d 646, 665–66 (4th Cir. 2015), *cert. denied*, No. 15-1045, 2017 WL 69177 (U.S. Jan. 9, 2017) (concluding that "the extend of [the defendant's] corporate wealth and its ability to fund a judgment through its own resources . . . were the critical facts on which [the previous Fourth Circuit] functional-liability decision was grounded" and therefore that decision "established that [the defendant's] access to its substantial corporate wealth was relevant to the functional-liability question, and that determination [was] a legal ruling that remain[ed] applicable in th[e] [second] appeal").   Further, Dr. Asterbadi has not shown that any of the exceptions apply. *See Chaplick*, 2016 WL 4516061, at *3.

Perhaps Dr. Asterbadi now is attempting to argue (without explicitly stating) that the Assignment Agreement was ambiguous and is challenging the affidavit resolving its ambiguity (the affidavit that *he* filed with the Court).   Yet, he already presented his argument that Wells Fargo "is not the lawful assignee of record of the Judgment" on page 3 of his Reply to Plaintiff's Memorandum of Law in Response to Order to Show Cause, ECF No. 20, which I considered in making my September 2015 ruling.   *See Wells Fargo I*, 2015 WL 5521797, at *1.   In finding that CIT did assign the Judgment to Wells Fargo and concluding that Wells Fargo had standing, I resolved this issue, and the Fourth Circuit affirmed my ruling. I will not revisit it.   *See Chaplick*,

14

2016 WL 4516061, at *3; *see also Aramony*, 166 F.3d at 661; *Washington Gas Light Co.*, 784 F. Supp. 2d at 571.

Equitable Estoppel

Dr. Asterbadi's other Rule 60(b)(6) argument is that, under principles of equitable estoppel, even if Wells Fargo is now the judgment creditor, the Court should not enforce the Judgment against him, because the creditor failed to act promptly in collecting on the Judgment. Def.'s Perm. Inj. Mot. 6.

> "Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded both at law and in equity, from asserting rights which might perhaps have otherwise existed ... as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse and who on his part acquires some corresponding right, either of property, of contract, or of remedy."

*Knill v. Knill,* 306 Md. 527, 534, 510 A.2d 546 (1986) (citation omitted); *see Leonard v. Sav-A-Stop Services,* 289 Md. 204, 211, 424 A.2d 336 (1981); *Bayshore Industries, Inc. v. Ziats,* 232 Md. 167, 175, 192 A.2d 487 (1963).

> Three essential and related elements are generally necessary to establish equitable estoppel: 1) voluntary conduct or representation; 2) reliance; and 3) detriment. *Markov v. Markov,* 360 Md. 296, 307, 758 A.2d 75 (2000). "Clearly ... equitable estoppel requires that the voluntary conduct or representation constitute the source of the estopping party's detriment." *Knill,* 306 Md. at 535, 510 A.2d 546. Ultimately, "whether or not an estoppel exists is a question of fact to be determined in each case." *Travelers, supra,* 244 Md. at 414, 224 A.2d 285; *see Markov,* 360 Md. at 307, 758 A.2d 75; *Gould v. Transamerican Assoc.,* 224 Md. 285, 297, 167 A.2d 905 (1961); *Liberty Mutual Ins. Co. v. American Auto. Ins. Co.,* 220 Md. 497, 501, 154 A.2d 826 (1959); *Zimmerman v. Summers,* 24 Md.App. 100, 120, 330 A.2d 722 (1975).

*Gregg Neck Yacht Club, Inc. v. Cnty. Comm'rs of Kent Cnty.*, 769 A.2d 982, 1005–06 (Md. Ct. Spec. App. 2001).[8]

---

[8] The parties agree that this Maryland case law applies.  *See* Def.'s Mot. 6; Pl.'s Opp'n 9.

Beyond identifying the elements, Dr. Asterbadi does not cite any law in support of his position that Wells Fargo is equitably estopped from enforcing the Judgment or explain how the judgment creditors' slow collection efforts constitute a representation that it would never collect on its Judgment or how his failure to make payments he was legally obligated to make under the Judgment constituted a reliance on that purported representation.  As for detriment in the form of interest accrued, Dr. Asterbadi has not shown why, when he was aware of the Judgment against him, he could not have made payments on the Judgment voluntarily to avoid the accrual of interest.  He concedes that he did not act in response to CIT's initial suit against him, in which it obtained a default judgment on October 4, 1993, until January 13, 2004, when he retained counsel and paid CIT $28,000 in an attempt to settle the case.[9]  Perm. Inj. Mot. 8.  When settlement efforts failed, Dr. Asterbadi, through counsel, attempted to argue that CIT committed fraud on the court when it did not reveal the "collateral [that] had been sold and that CIT had actually received $1,699,327.96 of sales proceeds which reduced the claim."[10]  *Id.* at 9.  The Eastern District of Virginia, and the Fourth Circuit on appeal, rejected the fraud argument.  *Id.*  Thus, Dr. Asterbadi has not shown that, but for the judgment creditors' delay, he would have paid the Judgment.  Rather, he has exacerbated the delay in the resolution in this matter and has not shown that principles of equitable estoppel apply.  *See Gregg Neck Yacht Club*, 769 A.2d at 1005–06.

## State Court Ruling

I held a conference call on February 23, 2017 with counsel regarding the pending motion and discovery dispute.  In advance of the call, Defense counsel provided me with a copy of the

---

[9] This $28,000 payment is part of the $81,500 noted as partial satisfaction of the Judgment.

[10] This amount also appears on a notice of partial satisfaction of the Judgment.

unreported opinion that the Maryland Court of Special Appeals issued on February 21, 2017 (*Asterbadi*, ECF No. 71), which he argues should be dispositive of the issue of Wells Fargo's ability to enforce the Judgment in this Court, because, in his opinion, this Court and the Fourth Circuit only addressed Wells Fargo's standing to respond to my show cause order.  I disagree.

In *Asterbadi*, CIT had recorded a notice of the 1993 judgment against Dr. Asterbadi in the Maryland Circuit Courts for Montgomery and Prince George's Counties on May 28, 2003. Slip op. at 1–2.  Then, on April 1, 2015, in both courts, CIT filed a notice of assignment of that judgment to Wells Fargo, but, significantly, "CIT did not file a copy of the actual assignment of the judgment with either court at that time."  *Id.* at 2.  Nor is there is any indication on either state court docket that Wells Fargo or Dr. Asterbadi filed a copy of the actual assignment at the time that the notice of assignment was filed.  *See* Docket in *CIT Grp. v. Asterbadi*, Civ. No. 242822V (Cir. Ct. Montgomery Cnty., Md.), http://casesearch.courts.state.md.us/casesearch/ inquiryDetail.jis?caseId=242822V&loc=68&detailLoc=MCCI; *CIT Grp. v. Asterbadi*, Civ. No. CAL 03-10985 (Cir. Ct. Prince George's Cnty., Md.), http://casesearch.courts.state.md.us/ casesearch/inquiryDetail.jis?caseId=CAL0310985&loc=65&detailLoc=PGV.    The    actual assignment was not filed until June 23, 2015, after the judgment had expired, when Wells Fargo filed in both courts a "supplemental notice [that] included a copy of the 2007 assignment agreement."  *Asterbadi*, slip op. at 3; *see id.* at 6 & n.6 (noting that "the judgment expired, at the latest, on May 28, 2015").

Prior to that filing, on May 28, 2015, Wells Fargo had filed a notice of renewal of the Judgment  in both courts.  *Id.* at 2–3.  Dr. Asterbadi moved to strike those notices, and the circuit courts denied his motions.  *Id.* at 3.  When he appealed, the Maryland appellate court concluded

that Wells Fargo did not have standing to renew the judgment in either court, and therefore the circuit courts should have granted his motions. *Id.* at 1.  It reasoned:

> [T]he notice of assignment filed by CIT in April 2015 did not satisfy the requirements of Rule 2-624 because CIT did not file the original or a copy of the actual assignment. Therefore, the notice of assignment did not transfer to Wells Fargo the right to enforce the judgment against Asterbadi. If Wells Fargo did not have the right to enforce the judgments on May 28th—and it didn't—then its attempt to renew the judgments on that day was ineffective because a judgment can be renewed only by the judgment holder. Md. Rule 2-625. Wells Fargo's belated filing of the assignment from CIT on June 23, 2015 did not breathe life back into the expired judgment because a judgment cannot be renewed after it expires.

*Id.* at 6.

Despite dealing with the same Judgment, the facts of *Asterbadi* are inapposite.  Here, the actual assignment was filed (albeit by Dr. Asterbadi, not the judgment creditor) on July 17, 2015.  ECF No. 23-1.  Thus, when Wells Fargo filed its Request and Notice for Renewal of Judgment in this Court on August 26, 2015, before the Judgment had expired, the Assignment already was on the docket, unlike in *Asterbadi*.  ECF No. 25.  The *Asterbadi* Court did not consider whether, under circumstances like those before me, a judgment creditor would have standing to renew a judgment when the assignment had been filed, but by someone other than the judgment creditor.  There, it was an issue of timing; here, it was an issue of identity of the filer. Moreover, as noted in footnote 4 of this Memorandum Opinion, this Court's opinion and the Fourth Circuit's opinion both addressed standing to enforce the Judgment, not simply standing to respond to the show cause order.  And, the Fourth Circuit's opinion is binding on this Court, whereas the unreported opinion of the Court of Special Appeals is not.  *See* Md. R. 1-104(a) ("An unreported opinion of the Court of Appeals or Court of Special Appeals is neither precedent within the rule of stare decisis nor persuasive authority.").

Moreover, although an unreported opinion of the Maryland Court of Special Appeals may be cited in federal court for purposes of *res judicata* or collateral estoppel, *see* Md. R. 1-104(b), neither doctrine applies.  When a federal court litigant asserts that a state court judgment has preclusive effect, "[the] federal court must give to [the] state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Under Maryland law, for collateral estoppel to bar relitigation of an issue, the defendant must demonstrate, *inter alia*, that "the issue decided in the prior adjudication [was] identical with the one presented in the action in question"; and "the party against whom the plea is asserted [was] given a fair opportunity to be heard on the issue." *Garrity v. Md. State Bd. of Plumbing*, 135 A.3d 452, 459 (Md. 2016) (quoting *Colandrea v. Wilde Lake Cmty. Assoc.*, 761 A.2d 899 (Md. 2000)). Here, the issue is not identical because Wells Fargo seeks to collect on a judgment for which the assignment was noted on the docket before it expired, whereas in state court, Wells Fargo sought to renew the judgment after it had expired.  Wells Fargo did not have the opportunity to be heard in state court on whether it could have renewed the judgment if Dr. Asterbadi had filed it on the state court docket prior to its expiration.

Under Maryland law, *res judicata*, or claim preclusion, provides grounds for dismissal if a defendant establishes that "(1) the present parties are the same or in privity with the parties to the earlier dispute, (2) the claim presented is identical to the one determined in the prior adjudication, and (3) there has been a final judgment on the merits." *Capel v. Countrywide Home Loans, Inc.*, No. WDQ-09-2374, 2010 WL 457534, at *3 (D. Md. Feb. 3, 2010) (citing *Anne Arundel County Bd. of Educ. v. Norville,* 887 A.2d 1029, 1037 (Md. 2005)).  Here, while the parties are the same, there are no "claim[s] presented," as these are cases in which the judgment

creditor seeks to enforce an already-final judgment entered in another jurisdiction.  Thus, *res judicata* simply is not applicable.

<u>Amount Due on Judgment</u>

What remains is Dr. Asterbadi's Rule 60(b)(5) argument that the Judgment has been, at least in part, satisfied.  According to Dr. Asterbadi, CIT and Wells Fargo have not been forthright with regard to payments he has made and the amount he currently owes, if anything. In particular, Dr. Asterbadi asserts that he entered into a Forbearance Agreement with CIT, under which he agreed to pay CIT $250,000 in principal, plus a set amount of interest each month, by July 8, 1996, in exchange for which CIT would release him from his obligation to pay the amount due under the judgment.  Def.'s Perm. Inj. Mot. 3.  He paid $81,500 under the Forbearance Agreement but then defaulted in July 1995.  *Id.* at 7–8, 10.  He acknowledges that this amount is reflected on the Notices of Partial Satisfaction that CIT filed.  *Id.* at 3 n.3.  In addition, he contends that the Judgment was enrolled in New Jersey state court in 2003, and New Jersey real property that he jointly held with his wife was sold through a sheriff's sale on May 8, 2005, "with proceeds of $551,000 paid to CIT as judgment creditor," but CIT never filed any notice with the courts where it had registered the Judgment.  *Id.* at 5, 10; *see* Sept. 8, 2005 Order from Cape May Cnty. Ct., N.J., Perm. Inj. Mot. Ex. 13, ECF No. 58-2, at 38 (noting that the amount recovered from the sale of the property, $551,000, was less than the unsatisfied portion of the principal, $586,682.01).  And, he asserts that the U.S. Marshal "seized and sold his personal motor vehicle" for $14,397.00 on February 24, 2005.  Def.'s Perm. Inj. Mot. 5.

As Dr. Asterbadi sees it, he has satisfied the $586,682.01 Judgment because his vehicle sold for $14,397.00; he "paid $81,500 toward the forbearance agreement amount"; and "as the result of the sale of his interest in the Stone Harbor [NJ] property, CIT had received another

$551,000." *Id.* at 5, 10 n.4, 11.  By his calculations, the seized real and personal property sales proceeds, "coupled with the forbearance payments of $81,500 exceeded the judgment principal amount and was more than twice what CIT have [sic] agreed to accept under the Forbearance Agreement." *Id.* at 11.  He also argues that, if interest is due, it should be at the statutory post judgment rates, as provided for in the Forbearance Agreement, not at the (higher) 1.5% rate provided for in the Judgment. *Id.* at 19–20.

### 1.  Effects of Forbearance Agreement

Insofar as Dr. Asterbadi may be arguing that he only owes the amount due under the Forbearance Agreement or that the terms of the Forbearance Agreement otherwise controls, he is wrong. Under Virginia Law, which governs the Forbearance Agreement, *see* Forbearance Agr. § 12, ECF No. 58-2, at 40–47, "it is the duty of the court to construe a written contract when it is clear and unambiguous on its face . . . ." *Online Res. Corp. v. Lawlor*, 736 S.E.2d 886, 894 (Va. 2013).  The Forbearance Agreement provided in clear and unambiguous language that, if Dr. Asterbadi defaulted, which he concedes that he did, then the *entire* principal amount under the Judgment, plus interest, minus anything paid, would become due.  Forbearance Agr. § 6. Therefore, the amount he owes is not limited to the amount due under the Forbearance Agreement.  Further, the Forbearance Agreement, as its name implies, provided that "CIT agree[d] to forbear from executing upon the Judgment, provided that Dr. Asterbadi fully and timely perform[ed]" under the Forbearance Agreement, but that "upon default, Asterbadi agree[d] that CIT shall be entitled to take all appropriate steps to enroll or file the Judgment in

any jurisdictions CIT deems appropriate." *Id.* §§ 14, 15.  Thus, once Dr. Asterbadi defaulted, the

terms of the Judgment, including those pertaining to interest, governed.[11]  *See id.*

2. *Effects of Payments Made*

With regard to his argument that he now owes less than appears on the December 2004

Notice of Partial Satisfaction of Judgment, that may be true, based on the sale of the New Jersey

real property and his vehicle.  As Wells Fargo notes, the proper approach for challenging the

amount of the Judgment is a Rule 60(b)(5) motion.  Rule 60(b)(5) provides that, "within a

reasonable time," a judgment debtor may file a motion asking for relief from a judgment on the

grounds that "the judgment has been satisfied."  Fed. R. Civ. P. 60(b)(5).  The vehicle and the

---

[11] Wells Fargo argues that "Asterbadi is collaterally estopped from challenging the calculation of post-judgment interest" because he already "challeng[ed] the issue of the applicable post-judgment interest rate in the United States District Court for the Eastern District of Virginia." Pl.'s Opp'n 11.  Wells Fargo attaches the relevant 2004 Memorandum Opinion and Order from the Eastern District of Virginia.  *See* June 15, 2004 E.D. Va. Mem. Op. & Order, Pl.'s Opp'n Ex. 3, ECF No. 61-3.  Notably, "[t]o apply collateral estoppel or issue preclusion to an issue or fact, the proponent must demonstrate [five elements, one of which is] that . . . the issue or fact was critical and necessary to the judgment in the prior proceeding." *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004) (citing *Sedlack v. Braswell Servs. Group, Inc.,* 134 F.3d 219, 224 (4th Cir.1998)).  This is one of the elements that Dr. Asterbadi challenges.  *See* Def.'s Reply 9.

Dr. Asterbadi filed a Rule 60(b)(5) and (6) Motion for Relief from Judgment in the United States District Court for the Eastern District of Virginia in 2004.  *See* June 15, 2004 E.D. Va. Mem. Op. & Order 1. The court identified two issues before it: "(1) whether CIT's representative had authority to sign the release; and (2) whether the release was the product of a unilateral mistake of fact."  *Id.*  Yet, its Findings of Fact included the fact that the Judgment "was entered in the amount of $2,286,009.97, plus interest from May 31, 1993 on the sum of $2,184.950 at the rate of 1.5% per month." *Id.* at 3.  It also found that the parties entered into the Forbearance Agreement, which provided that "[i]f Asterbadi failed to pay the agreed amount, the agreement would be breached, and instead the unsatisfied amount of the judgment would be due," *id.*, and that Dr. Asterbadi breached the Forbearance Agreement, *id.* at 3–4.  Thus, while not ruling specifically on the amount of interest due after breach, the Eastern District of Virginia already determined that, if Dr. Asterbadi breached the Forbearance Agreement, the Judgment's terms (which included interest at 1.5%) would govern.  *See id.*  But, Wells Fargo has not shown that this fact was "critical and necessary to the judgment in the prior proceeding."  *See In re Microsoft Corp. Antitrust Litig.*, 355 F.3d at 326.  Therefore, collateral estoppel does not apply. *See id.*

New Jersey real property were sold in 2005, and Wells Fargo renewed its efforts in this Court on May 12, 2015; Dr. Asterbadi did not mention the proceeds until filing his request to file his Permanent Injunction Motion on December 8, 2016. ECF No. 53.  At first glance, that certainly does not seem like a reasonable time.  But, Dr. Asterbadi acted promptly once he realized Wells Fargo was pursuing collection and this case was moving forward.  Thus, insofar as his Permanent Injunction Motion is construed as a Rule 60(b)(5) motion, he filed it within a reasonable time.

Wells Fargo does not argue that CIT did not receive $551,000 (and it does not address the vehicle sale).  Rather, it argues that the "collection activity in New Jersey [has] no bearing on the Judgment registered in this Court," because, when Asterbadi defaulted on the terms of the Forbearance Agreement, CIT regained the right to "execute upon the 'Judgment,'" which was the "'Judgment,' as defined in the Forbearance Agreement," that is, "the Original Judgment . . . the same Judgment registered in this Court," unreduced by that earlier collection effort.  Pl.'s Opp'n 5–6 (citing Forbearance Agr. ¶¶ R.1, 6.1, 8.1).[12]  Thus, the parties dispute the application of the money received from the real property and vehicle, as well as the $81,500 paid under the Forbearance Agreement, and the effects of these credits on interest accrued.  The $81,500 appears on the Notice as "credits against accrued interest," but Dr. Asterbadi argues that it could have "been applied to the principal balance of the judgment."  *Id.* at 11–12.  Pursuant to Forbearance Agreement § 2.4, payments were to be applied

> 2.4.1 first, toward any amounts CIT has spent to satisfy claims under § 5.1 [regarding Dr. Asterbadi's life insurance policy];
>
> 2.4.1 second, toward interest incurred to date of payment;
>
> 2.4.3 third, toward reduction in principal.

---

[12] Given the timing of events, with Dr. Asterbadi's default under the Forbearance Agreement occurring in 1995 and the collection efforts in New Jersey occurring between 2003 and 2005, it is unclear to me how these later collection efforts would not diminish the Judgment.

It is unclear whether CIT had to make any payments under § 5.1 (which provided that CIT would make payments on Dr. Asterbadi's life insurance policy for which it was beneficiary if he failed to make the payments himself) and how much interest accrued during the time Dr. Asterbadi was making payments.   If the judgment creditor received $551,000 from the real property and $14,397 from the vehicle and if these payments should have been applied to the principal, by the time Wells Fargo acquired the Judgment, Dr. Asterbadi only owed another $21,285.01 on the $586,682.01 principal plus $88,002.30 in attorneys' fees. It appears that, if the proceeds from the property sales and $21,285.01 of the $81,500 were applied toward the principal, then that amount could have satisfied the principal and stopped the accrual of interest in 2005. And, if some amount less than the full amount of the principal were applied, that could have reduced the accrual of interest. Discovery and/or an accounting may enable Dr. Asterbadi to show that the Judgment was satisfied in part.   Therefore discovery and perhaps an accounting are necessary to determine how much is due and how much Wells Fargo seeks to collect.

While, in the mine run case, a judgment debtor is not entitled to discovery, this case presents unusual circumstances with underlying issues to resolve, given the intervening collection efforts since the Judgment issued more than two decades ago.   Discovery is necessary to resolve those issues.   And, although procedural rules provide for a judgment *creditor* to pursue discovery in aid of execution, *see* Fed. R. Civ. P. 69; Md. R. 2-633, discovery can be ordered in this Court's discretion, and district courts have "wide latitude in controlling discovery," *Rowland v. Am. Gen. Fin., Inc.*, 340 F.3d 187, 195 (4th Cir. 2003).   Thus, insofar as Dr. Asterbadi seeks discovery to determine the amount still due on the Judgment, I will grant his motion as described in the discovery plan below.   His request for an accounting is denied without prejudice to renewal should discovery show that an accounting is necessary.   His motion otherwise is denied.

### Discovery Dispute

Dr. Asterbadi seeks discovery with regard to why CIT and Wells Fargo took no enforcement action for more than a decade. Because this discovery pertains to his equitable estoppel argument, which he did not support, I will not permit it. Dr. Asterbadi also seeks discovery to determine what CIT assigned to Wells Fargo, and specifically whether it intended to assign the Judgment to Wells Fargo. Because this Court and the Fourth Circuit already determined that CIT assigned the Judgment to Wells Fargo, I will not permit this discovery.

Additionally, Dr. Asterbadi seeks discovery to determine what payments CIT received toward the Judgment and how CIT treated payments it received. And, Wells Fargo seeks discovery in aid of execution on the Judgment. I will permit these two tracks of discovery to proceed at the same time as follows, with the following subjects of discovery the only ones permitted at this time:

1.     Wells Fargo may pursue discovery to identify assets of Dr. Asterbadi, and any assets identified may be preserved so that once the outstanding balance that Dr. Asterbadi owes under the Judgment has been determined, then at that time (but not before), the assets may be transferred to Wells Fargo or disposed of in a manner that otherwise satisfies the Judgment; and

2.     It is clear that CIT undertook collection efforts, beginning with selling the airplane in 1993. CIT filed notices of partial satisfaction of the Judgment, but these notices have not been updated in more than a decade. Accordingly, Dr. Asterbadi may move forward with discovery to determine the amount of the Judgment that remains unpaid. Specifically, he may pursue discovery from Wells Fargo, as well as CIT and other appropriate third parties, regarding

(a) payments made by or assets seized from Asterbadi, or others on behalf of Asterbadi, that were credited toward the Judgment;

(b) how any such payments or assets were applied to the Judgment; and

(c) what Wells Fargo contends still is due on the Judgment.

I note that, if Dr. Asterbadi begins with Wells Fargo's belief regarding the balance due, the parties may be able to come to an agreement rather than having to pursue this discovery.

## **Conclusion**

In sum, Dr. Asterbadi's Motion for a Permanent Injunction, ECF No. 58, IS GRANTED IN PART AND DENIED IN PART.  Specifically, construed as a Rule 60(b)(5) motion for relief from a judgment that has been, at least in part, satisfied, the motion IS GRANTED as follows:

  i. Wells Fargo may pursue discovery to identify (and preserve) assets of Dr. Asterbadi, so that once the outstanding balance that Dr. Asterbadi owes under the Judgment has been determined, then at that time (but not before), the assets may be transferred to Wells Fargo or disposed of in a manner that otherwise satisfies the Judgment; and

  ii. Dr. Asterbadi may move forward with discovery to determine the amount of the Judgment that remains unpaid.  Specifically, he may pursue discovery from Wells Fargo, as well as CIT and other third parties, regarding

    (a) payments made by or assets seized from Dr. Asterbadi, or others on behalf of Dr. Asterbadi, that were credited toward the Judgment;

    (b) how any such payments or assets were applied to the Judgment; and

    (c) what Wells Fargo contends still is due on the Judgment;

Dr. Asterbadi's request for an accounting IS DENIED without prejudice to renewal should discovery show that an accounting is necessary; and his motion otherwise IS DENIED.

A separate order will issue.

Date: <u>March 2, 2017</u>                                   <u>      /S/            </u>
                                                        Paul W. Grimm
                                                        United States District Judge

lyb